UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ALYSON G., | ) | |
| | ) | |
|        *Plaintiff* | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00502-JDL |
| | ) | |
| ANDREW M. SAUL, | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
|        *Defendant* | ) | |

### *REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability (SSD) appeal raises the question of whether, following a remand, the administrative law judge (ALJ) supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ (i) rejected the physical residual functional capacity (RFC) opinion of treating source Eric Haskell, D.O., on the erroneous basis that it did not pertain to the relevant time period, (ii) rejected the mental RFC opinion of treating source Holly Briggs, L.C.P.C-C. ("Counselor Briggs"), on the same flawed basis and contravened the "mandate rule" and/or law of the case in so doing, (iii) acknowledged that she did not consider the opinions of treating psychiatrist Michael Patnaude, D.O., which supported the Briggs opinion, and (iv) purportedly relied on, but mischaracterized, the hearing testimony of expert psychologist Ira H. Hymoff, Ph.D. Plaintiff's

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Itemized Statement of Errors ("Statement of Errors") (ECF No. 12) at 6-18. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff last met the insured status requirements of the Social Security Act on December 31, 2006, Finding 1, Record at 717; that, through her date last insured (DLI), she had the severe impairments of major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder, Finding 3, *id*. at 718; that, through her DLI, she had the RFC to perform a full range of work at all exertional levels except that, in an eight-hour workday, she could perform simple, routine tasks for two-hour blocks of time, could never work with the public, could work in sight of coworkers but could not perform work requiring teamwork or collaborative work, could have up to occasional interaction with supervisors, and could make basic work-related decisions and adapt to routine changes in the work environment, Finding 5, *id*. at 720; that, through her DLI, considering her age (42 years old, defined as a younger individual, as of her DLI, December 31, 2006), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 1, 7-10, *id*. at 717, 723; and that she, therefore, had not been disabled from her alleged onset date of disability, August 11, 2006, through her DLI, December 31, 2006, Finding 11, *id*. at 724. The Appeals Council declined to assume jurisdiction of the case following remand, *id*. at 700-03, making the decision the final determination of the commissioner, 20 C.F.R. § 404.984(a), (b)(2); *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g); *Manso-Pizarro v. Sec'y of Health &*

*Human Servs.*, 76 F. 3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Handling of Haskell Opinion

Dr. Haskell submitted a physical RFC opinion dated September 11, 2014, in which he checked boxes indicating limitations in the plaintiff's ability to lift/carry, stand and/or walk, push and/or pull, and climb, balance, kneel, crouch, crawl, and stoop. *See* Record at 689-92. He noted that this represented his "professional opinion as to [the plaintiff's] physical limitations from 8/11/06 to present." *Id*. at 692.

The ALJ stated that she "ha[d] not considered" the Haskell opinion because "there [was] no indication that [it was] meant to refer back to the time period prior to [the plaintiff's DLI]." *Id*. at 718. This, as the commissioner concedes, was error. However, the commissioner argues that the error was harmless in that (i) the ALJ found only one medically determinable, but nonsevere, impairment of obesity as of the plaintiff's DLI, and (ii) nothing in the Haskell opinion tied any of the assessed limitations to the plaintiff's obesity. *See* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 13) at 3-5; Finding 3, Record at 718.

3

The commissioner's argument is a *post hoc* rationalization. Pursuant to the rule of *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), "a reviewing court cannot affirm an agency's decision on the basis of a *post hoc* rationalization but must affirm, if at all, on the basis of a rationale actually articulated by the agency decision-maker." *Clark v. Astrue*, Civil No. 09-390-P-H, 2010 WL 2924237, at *3 (D.Me. July 19, 2010) (*rec. dec., aff'd* Aug. 9, 2010). However, "an exception to the *Chenery* rule exists when a remand will amount to no more than an empty exercise because, for example, application of the correct legal standard could lead to only one conclusion[.]" *Id.* at *4 (citation and internal quotation marks omitted).

The commissioner makes a persuasive argument that this exception pertains here. In determining that the plaintiff had no severe impairment of obesity as of her DLI, the ALJ relied on December 15, 2006, treatment notes "show[ing] that the [plaintiff] appeared normally oriented, ambulated normally and [had] no abnormal respiratory findings[,]" as well as the opinion of agency nonexamining consultant Donald Trumbull, M.D., on reconsideration that the plaintiff had no severe physical impairment as of her DLI. Record at 718.

At Step 2, a claimant must "identify the specific limitations imposed by [her] impairments, whether or not severe, that would have necessarily affected the outcome of her application for benefits[.]" *Courtney v. Colvin*, Civil No. 2:13-cv-72-DBH, 2014 WL 320234, at *4 (D. Me. Jan. 29, 2014). Because Dr. Haskell did not attribute any limitations to the plaintiff's obesity, *see* Record at 689-92, and the plaintiff identifies no evidence that she had limitations resulting from obesity as of her DLI, *see* Statement of Errors at 6-9, a remand for consideration of the Haskell opinion would amount to an empty exercise, *see, e.g.*, *Beaulieu v. Colvin*, Civil No. 1:14-cv-335-DBH, 2015 WL 4276242, at *2 (D. Me. July 14, 2015) (claimant did not establish that ALJ's failure to discuss his Tourette's syndrome was "anything other than harmless error" when it was

"not clear whether the check marks placed" on treating physician's RFC form pertained to "limitations caused by ADHD or Tourette's syndrome, or by a combination of those two impairments").[2]

Remand, accordingly, is unwarranted on the basis of this point of error.

### B.  Handling of Briggs Opinion

Counselor Briggs submitted a mental RFC opinion dated June 13, 2014, in which she checked boxes indicating that the plaintiff had a number of significant mental limitations in her ability to do unskilled work and would be absent from work for more than four days per month as a result of her impairments or treatment. *See* Record at 686, 688. She noted that this represented her "professional opinion as to [the plaintiff's] limitations from 8/11/06 to present." *Id*. at 688.

The ALJ stated that she had "not considered" the Briggs opinion, explaining that Counselor Briggs had "note[d] that she did not start working with the [plaintiff] until February 19, 2013, well after the [plaintiff's DLI][,]" and that the opinion, therefore, was "not relevant to the time period under adjudication as the provider had no knowledge of the [plaintiff]'s functioning prior to her [DLI] and has been given no weight." *Id*. at 722.

The plaintiff argues that, as in the case of the Haskell opinion, the ALJ erroneously rejected the Briggs opinion on the basis that it did not pertain to the relevant time period. *See* Statement of Errors at 9-10. She adds that, in so finding, the ALJ also transgressed the *res judicata* principles of the law of the case and the mandate rule, circumventing this court's 2017 decision vacating a prior decision in this case. *See id*. at 10-11. I find no error in either respect.

---

[2] As the commissioner notes, *see* Opposition at 4-5, in an October 20, 2011, treatment note, Dr. Haskell listed 13 active problems for the plaintiff, including obesity, hypothyroidism, hyperlipidemia, a herniated disc, and lumbago, *see* Record at 566-67.

First, as the commissioner notes, *see* Opposition at 11, a licensed clinical professional counselor is not defined as an "acceptable medical source" pursuant to 20 C.F.R. § 404.1502(a). Accordingly, pursuant to regulations applicable to claims such as this one filed before March 27, 2017, Counselor Briggs did not offer a "medical opinion" and was not defined as a "treating source." 20 C.F.R. § 404.1527(a)(1)-(2). The ALJ, therefore, was required only to "generally . . . explain the weight given to" the Briggs opinion "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id*. § 404.1527(f)(2); *Robshaw v. Colvin*, No. 1:14-cv-281-JHR, 2015 WL 3951959 at *3 (D. Me. June 28, 2015) (ALJ's handling of report of physical therapist met applicable standard when ALJ "explained the weight that she had given the report and why").

The ALJ did so here, explaining that she gave Counselor Briggs' opinion no weight because she had not begun working with the plaintiff until 2013 and, therefore, had no knowledge of her condition as of her DLI. *See* Record at 722. In any event, even granting, as the plaintiff contends, that "consideration of retrospective opinions is not merely permissible but necessary in many cases[,]" Statement of Errors at 9, the fact that Counselor Briggs did not begin working with the plaintiff until more than six years after the expiration of her DLI constituted a valid reason to decline to adopt her assessed limitations.

Turning to the plaintiff's second argument, I conclude that the ALJ's handling of Counselor Briggs' opinion did not run afoul of *res judicata* principles. In 2017, this court held remand warranted on the basis that "[e]ven assuming, *arguendo*, that the ALJ supplied the requisite good reasons for rejecting the Patnaude opinion and made reasonably clear that, had he addressed the Briggs opinion, he would have rejected it for the same reasons, . . . he erred in crafting a mental

6

RFC determination without sufficient explanation and that was not more favorable than the evidence otherwise supported." *Geoffrion v. Berryhill*, No. 2:16-cv-00596-JAW, 2017 WL 5665556, at *3 (D. Me. Nov. 26, 2017) (rec. dec., *aff'd* Dec. 18, 2017). As the commissioner correctly argues, the "language [of the 2017 decision] simply does not indicate that the Court found that Ms. Briggs's opinion deserved significant weight or was reasonably supported; indeed, the Court made no factual or legal finding of the opinion's import." Opposition at 12.

Remand, accordingly, is unwarranted on the basis of this second point of error.

### C.  Handling of Patnaude Opinions

The plaintiff next asserts that the ALJ failed to consider the opinions of her treating psychiatrist, Dr. Patnaude. *See* Statement of Errors at 13-14. Yet, as the commissioner rejoins, *see* Opposition at 14-16, the premise of this argument is faulty. The ALJ explicitly considered both Dr. Patnaude's mental RFC opinion (Exhibit 14) and his summary of his longitudinal treatment relationship with the plaintiff (Exhibit 18), stating:

> The majority of Exhibit 18F covers the period after the [plaintiff's DLI]. These statements are given little weight as they are not supported by objective treatment records nor the [plaintiff]'s treatment history prior to her [DLI]. They appear to rely exclusively on the [plaintiff]'s own reporting of her functioning. Dr. Hymoff, when asked about Dr. Patnaude's reports of the [plaintiff]'s inability to remain on task, stated that he did not find support in the record for this limitation lasting a full year after the [plaintiff]'s hospitalization. He stated that the record indicated that the [plaintiff] improved after her hospitalization. This is consistent with the summary by Dr. Patnaude, who notes that the [plaintiff] herself reported improvement in her functioning by February of 2017. It would appear that the [plaintiff] had appointments with Dr. Patnaude in February, May, July, November and December. The [plaintiff] missed appointments in November and December, and therefore had only three appointments with her provider that year. This level of treatment in inconsistent with the conclusion that the [plaintiff]'s impairments remained acute. (Exhibit 18F p.1).[3]

---

[3] In context, it is clear that the ALJ meant to refer to 2007 rather than 2017. In the cited page of the Patnaude summary, Dr. Patnaude indicated that the plaintiff reported "[b]y February of 2007 . . . that she was subjectively feeling better[,] . . . [b]y May . . . was fatigued all the time and by July she reported that she was doing poorly[,]" and "[i]n November and December she missed appointments[.]" Record at 696.

7

Record at 722-23.  At oral argument, the plaintiff's counsel contended for the first time that these did not constitute the requisite "good reasons" for the rejection of a treating source opinion pursuant to regulations pertaining to claims filed before March 27, 2017.  20 C.F.R. § 404.1527(c)(2) ("[The commissioner] will always give good reasons in [his] notice of determination or decision for the weight [he] give[s] a [claimant's] treating source's medical opinion.").  As counsel for the commissioner rejoined, the plaintiff waived this point by failing to raise it in her statement of errors.  *See, e.g., Farrin v. Barnhart*, No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).

That said, the plaintiff did squarely challenge the ALJ's handling of the Patnaude opinion in the context of separately challenging her reliance on the Hymoff testimony.  *See* Statement of Errors at 16-18.  I address that final point below.

### D.  Reliance on Hymoff Testimony

The plaintiff finally argues that the ALJ erred in "simply ignor[ing]" the testimony at hearing of Dr. Hymoff and VE Maxim that her impairments likely would cause her to miss four days per month of work, rendering her unemployable.  Statement of Errors at 16.  However, the plaintiff ignores Dr. Hymoff's critical testimony that the record was devoid of evidence that the plaintiff's impairments would have caused that level of absenteeism in the year following her DLI. *See* Record at 751.  The ALJ, in turn, relied on that testimony in determining that the plaintiff's mental impairments did not meet the so-called "duration requirement."  *Id*. at 721-22; 42 U.S.C. § 423(d)(1)(A) (defining the term "disability" to mean an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"); 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or be expected to last for a continuous period of at least 12 months."); *Barnhart v. Walton*, 535 U.S. 212, 222-23 (2002) (commissioner's 12-month duration requirement applies "to both the 'impairment' and the 'inability' to work requirements"). The ALJ's finding that the plaintiff's mental impairments did not meet the duration requirement during the relevant time period, accordingly, was supported by substantial evidence.

At hearing, Dr. Hymoff was asked a series of questions about his review of the medical record. He testified that he had reviewed the plaintiff's file, including Dr. Patnaude's progress notes spanning the approximately 12-year period he had treated her and his longitudinal summary of his treatment relationship with her (Exhibit 18F). *See id*. at 738-39. He further testified that (i) the plaintiff had undergone a serious hospitalization on November 29, 2006, during which she was diagnosed with major depressive disorder, primarily with a postpartum focus, *see id*. at 739-40, (ii) there was no evidence that, following that acute episode, the plaintiff had a sustained marked level of impairment for 12 months, as a result of which her impairments did not meet the duration requirement; for example, the plaintiff was noted to be feeling better in 2007 and missed several appointments in January 2008, *see id*. at 744-45, and (iii) the plaintiff had primarily moderate, rather than marked, functional restrictions for the period following her 2006 hospitalization until she had a second psychiatric hospitalization in 2012, *see id*. at 743-44, 748.

The plaintiff's attorney then asked Dr. Hymoff whether there would have been "any problems, any limitations with attendance, punctuality, timeliness . . . during that 2006[] to 2012

period[,]" in response to which Dr. Hymoff testified that "there were periods of time when [the plaintiff] was functioning at a better level, and at times her depression returned and she was more at home and not able to function . . . [s]o I would say it was episodic[,]" with "periods of time during that time when [the plaintiff] may not have been able to have regular attendance." *Id*. at 749.

The plaintiff's attorney then inquired whether Dr. Hymoff disagreed with Dr. Patnaude's opinion, "speaking longitudinally, even for the period between acute psychiatric hospitalizations[,]" that, "if [the plaintiff] tried to return to full time work, work stress would overwhelm her, and she anticipates she would end up missing more than four days per month." *Id*. at 749-50. Dr. Hymoff responded that, given that Dr. Patnaude had known the plaintiff for 12 years, he "would have to defer to that opinion[.]" *Id*. at 750. He elaborated:

> I've looked at his notes and at the record that these depressive episodes were episodic, and at times she became depressed and not – other times she was more highly functioning. So for him to say that she would miss four days a month . . . I can understand how he would reach that conclusion.

*Id.*

Following that exchange, the ALJ asked Dr. Hymoff whether there was "anything in the record . . . a year out from the DLI[] that you see that supports that [the plaintiff] was having some heightened episode of depression[.]" *Id.* at 751. Dr. Hymoff responded:

> . . . I don't think so because I think most of the actual treatment notes from that period – and I would say [Dr. Patnaude's] [Exhibit] 18F letter, and I've read some of that before, and it didn't seem like she had that kind of – sustained at that level for at least a year after that.
>
> [Dr. Patnaude] said in 2009, she . . . would stay in bed because of depression, and changing medication, and seemed to be doing better at times. I didn't see anything that was sustained at that level a year after the acute episode.

*Id.*

Following Dr. Hymoff's testimony, the ALJ asked the VE if an individual with the same limitations that she ultimately assessed in her RFC finding (which were predicated on Dr. Hymoff's testimony) would be able to work. *See id.* at 762; *compare* Finding 5, *id*. at 720 *with id*. at 745-47. The VE responded that there were occupations that would allow for those limitations. *See id.* at 762. The ALJ then asked whether, if she "added to [the RFC] hypothetical that the individual would be on a consistent basis absent from the workplace . . . about four days a month," there would be "any work that individual could do[.]" *Id*. at 762-63. The VE testified, "That attendance pattern would not be acceptable, and would not allow for work." *Id.* at 763.

The ALJ gave "great weight" to Dr. Hymoff's opinion. *Id.* at 722. The plaintiff argues that, despite purporting to do so, she "simply ignored the undisputed medical and vocational evidence that [the plaintiff's] mental impairments, for at least the period from 2006 to 2012, would have resulted in a probable absenteeism rate that would have precluded any work existing in significant numbers in the national economy." Statement of Errors at 18. While, in the passage of the hearing transcript on which the plaintiff relies, Dr. Hymoff did testify that he "would have to defer" to Dr. Patnaude's opinion and that he could "understand how [Dr. Patnaude] would reach th[e] conclusion" that the plaintiff "would miss four days a month" during the time period from 2006 to 2012, *id*. at 750, he made clear that, in his view, during the critical time period – the year following the plaintiff's hospitalization for postpartum depression and her DLI – there was no evidence that the acute level of symptoms persisted, *see, e.g., id*. at 744-47, 751.

The ALJ, in turn, accepted Dr. Hymoff's testimony that, although the plaintiff's "acute postpartum depression would likely have impacted her attendance in the short-term," there "was no indication that this attendance limitation would last longer than 12 months." *Id.* at 721. This,

11

in turn, constituted substantial evidence in support of her finding that the plaintiff's mental impairments did not meet the 12-month duration requirement.

Remand, accordingly, is unwarranted on the basis of this final point of error.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of October, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge